IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      v.

SHANE P. JOHNSON,

      Defendant.

Case No.: 17-cr-00119-wmc

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

I.    Introduction

    Shane Johnson is a repeat drug offender who also has multiple convictions for violent behavior.  His first felony drug offense was in 1995 when he was 18 years old.  Despite two prior convictions for felony drug offenses, Johnson remained undeterred, continuing to sell drugs.  He has now been convicted of possessing with intent to distribute 98% pure methamphetamine.

    While the guideline range for this offense is 168 to 210 months, the defendant faces a mandatory minimum term of twenty years in prison, based on the amount and purity of the drugs he possessed and his prior convictions.  For the reasons below, this sentence is not only mandatory, it is necessary and warranted.

II.    Sentencing Argument

    As this Court is aware, federal sentencing is guided by 18 U.S.C. § 3553.  Section 3553 directs courts to focus on who the defendant is and what the defendant did (§

3553(a)(1)), and to address various societal goals in sentencing (§ 3553 (a)(2-7)). A brief analysis of Section 3553 supports a sentence of twenty years in prison.

    A.    Nature and Circumstances of the Offense

Title 18, United States Code, Section 3553(a)(1) directs the Court to consider the nature and circumstances of the offense – what did the defendant do? The defendant's actions warrant a sentence of twenty years.

On November 22, 2017, Chippewa Falls police officers were dispatched to investigate the drug overdose death of Nicholas Buck. (R. 26, ¶ 8). Officers ultimately determined that Buck probably died from a heroin overdose. (Id.). Witnesses told investigators that Buck likely purchased the drugs from the defendant. (Id., ¶ 9). Additionally, agents analyzed Buck's phone and found text messages and location data that seemed to indicate Buck purchased the drugs from the defendant. (Id.).[1]

Based in part on the above information, officers obtained a search warrant for the defendant's residence and executed it on November 23, 2017. (R. 26, ¶ 11). In the house, officers found approximately 238 grams of methamphetamine, 432 grams of marijuana, 23.1 grams of heroin, 21.1 grams of cocaine, 284 vials of what officers suspected to be steroids, and multiple bags of unknown powders. (Id.). Agents also found two pistols and approximately $5,135. (Id.). The United States Postal Service Forensic Laboratory analyzed the methamphetamine and determined it was

---

[1] While the information shows that the defendant was the likely source of the drugs contributed to Buck's death, the defendant is not charged federally with causing Buck's death.

approximately 98% pure. (Id., ¶ 14). The Wisconsin State crime lab analyzed the heroin and found that it also contained fentanyl. (Id., ¶ 15).

  B.  History and Characteristics of the Defendant

The defendant has a long criminal history involving drugs and violence, beginning when he was just eighteen years old. On December 12, 1995, officers entered a hotel room where the defendant was staying and found him with ten baggies of marijuana that he intended to sell. (R. 26, ¶ 59).

The defendant's history of violence began in 1998 when he attacked a neighbor who asked him to stop urinating on the neighbor's front step. (R. 26, ¶ 63). When the police arrived, they saw the neighbor had small cuts on his face and a swollen nose. (Id.). The neighbor told the police that the defendant also punched out a window causing it to break. (Id.).

Four years later, the defendant attacked two people outside a restaurant. (R. 26, ¶ 68). After bystanders broke up the fight, the defendant tackled one of the victims as he began to walk away. (Id.). When police arrived, they saw the victim had a bloody nose and swelling near his eye. (Id.). In 2006, the defendant was in a bar when he hit someone on the head with a beer bottle, after that person shoved the defendant. (R. 26, ¶ 70).

In 2009, the defendant was involved in a verbal dispute with two men that escalated into a yet another physical altercation, this one involving a gun. After he was knocked to the ground, the defendant went into his house then "barged out the side door" and displayed a pistol. (R 26, ¶ 75). He pointed the pistol near the ground where

one of the men was standing and began shooting. (Id.). One of the men suffered a bullet wound to his leg. (Id.). The defendant was convicted of second-degree reckless injury and sentenced to four years in prison. (Id.). As part of his conviction in this case, the defendant was also convicted of manufacturing or delivering less than three grams of methamphetamine for conduct that occurred in another county and sentenced to three years in prison for that offense. (R. 26, ¶ 75).

After being released from prison for these offenses, the defendant was placed on extended supervision. The defendant violated his supervision by using drugs, violating traffic laws, and absconding. (Id.).

In between the above criminal convictions, the defendant was also convicted of criminal trespass, obstructing an officer, OWI 2nd, 3rd, and 4th, theft, possession of marijuana, bail jumping, escape, and carrying a concealed weapon. (R. 26, ¶¶ 61-62, 64-67, 71, 73).

While the defendant had a difficult relationship with his stepfather, he maintained a close relationship with his mother for the most part and his basic needs were always met. (R. 26, ¶ 118). Once he began getting into trouble as a juvenile, he went to Florida to live with his father. (Id., ¶ 119). While in Florida, he continued to get in trouble, quit school, drank, and experimented with drugs. (Id., ¶ 120).

This experimentation led to long-term drug use and abuse, including at least three overdoses and five trips to a detoxification program. (R. 26, ¶¶ 133, 144). The

defendant completed treatment in prison, but did not follow-up with after care once he was released. (R. 26, ¶¶ 142-143).[2]

In 2014, the defendant's first child was born. After her mother abandoned the child, the defendant worked with Child Protective Services (CPS) to gain custody of her. (R. 26, ¶ 123). Yet, despite being the child's sole provider and having another child he was responsible for, the defendant used drugs, kept large amounts of drugs in his home where the children lived, and sold drugs in the community.

    C.    Need for the 20-Year Sentence

Johnson's history, combined with the present offense, speaks to his character. He has a lengthy history of violence and drug and alcohol offenses. While he certainly deserves credit for working with CPS to gain custody of his daughter, he squandered the opportunity to parent her by his subsequent drug-related behaviors.

Section 3553 directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the subsection." Included in those factors are the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.

---

[2] While on supervision, the defendant had the opportunity to complete AODA treatment. (R. 26, ¶ 75). He did not take advantage of this service; he rarely went to group sessions and had limited participation when he did go. (Id).

A sentence of twenty years, while greater than the guidelines, is just punishment and reflects the seriousness of the offense. Additionally, a twenty-year sentence protects the public from the defendant's drug dealing for a very long time.

III.   Conclusion

Shane Johnson is a drug dealer who remains undeterred despite spending time in prison for the same type of offense. He faces a mandatory minimum of twenty years in prison, which is the appropriate sentence in this case

Dated:  May 3, 2018

                Respectfully submitted,

                SCOTT C. BLADER
                United States Attorney

By:      /s/
                ELIZABETH ALTMAN
                Assistant United States Attorney